ROBERT A. DOLINKO (State Bar No. 076256)
rdolinko@nixonpeabody.com
HILLARY J. BACA (State Bar No. 288068)
hbaca@nixonpeabody.com
NIXON PEABODY LLP
One Embarcadero Center, Suite 1800
San Francisco, CA 94111
Telephone:    (415) 984-8200
Facsimile:    (415) 984-8300

Attorneys for Defendant
THE HERTZ CORPORATION

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMBRIES PICHON,<br><br>    Plaintiff,<br><br>v.<br><br>THE HERTZ CORPORATION; STEVEN CHUA; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No.: 3:17-cv-02391-EMC<br><br>**DECLARATION OF STEVEN CHUA IN SUPPORT OF DEFENDANT THE HERTZ CORPORATION'S MOTION FOR SUMMARY JUDGMENT**<br><br>[FED. R. CIV. PROC. 56]<br><br>Hearing Date: July 5, 2018<br>Time: 1:30 p.m.<br>Courtroom: 5 |

I, Steven Chua, hereby declare and state:

1. I am a current employee of Defendant The Hertz Corporation ("Hertz"). My job title is General Manager. I have held this position for approximately five years. I have been employed by Hertz for about 30 years. I have personal knowledge of the facts set forth in this declaration and could and would competently testify to these facts if called upon as a witness.

2. I am not now, and have never been, an Officer, Director, or Managing Agent of Hertz. I do not exercise any authority or control over any company-wide decisions. I have no ability to set or create Hertz company policy.

3. I have reviewed the First Amended Complaint in the above-entitled action. It was filed by Plaintiff Ambries Pichon ("Ambries"). I have known Ambries for many years as we both worked for Hertz in San Jose in the early 2000s.

4. I became Ambries' immediate supervisor at Hertz when I assumed the duties of General Manager of Hertz's Oakland Airport facility (in addition to keeping my duties as GM over the San Jose Airport Hertz operation) in December 2015.

5. On or around August 3, 2016, I met with Martha Rangel (a former Maintenance Manager at the Oakland facility) because her employment was ending due to her decision to voluntarily retire. She reported directly to Ambries at that time. During my conversation with Martha, she volunteered that Ambries had been allowing mechanics to work on non-Hertz vehicles at the Oakland facility. Martha then related a relatively recent incident where a person showed up at the Oakland maintenance facility while she was there but Ambries was not. She said that person asked if Ambries was there so that Ambries could take a look at that person's car that was having some sort of problem.

6. I worked with Human Resources Business Partner Jaimie Tison to investigate Martha's allegation about Ambries allowing off-duty mechanics to use the Hertz maintenance facility to work on private vehicles. During the investigation, Ambries admitted that he permitted his mechanics while off-duty to work on their private vehicles using the Hertz facility and equipment at the Oakland Airport. He claimed he had permission to do so from prior Hertz Oakland Airport managers.

7. I never gave Ambries permission to allow his employees to work on their private vehicles using the Hertz facility and equipment. While I am sure I would allow a mechanic to help an employee with something like a flat tire or a dead battery, I have never given anyone permission to let mechanics (on-duty or off-duty) work on private vehicles using Hertz equipment and facilities.

8. During our investigation into Martha's allegations, Jaimie Tison and I were told by prior Hertz Oakland General or Area Managers, Hong Chu and Shiuab Bulhan, and by Zone Maintenance Manager Jim Bell, that they had never given Ambries permission to let his off-duty mechanics use the Hertz maintenance facility to work on their private vehicles.

9. While I am aware that Ambries' employment was terminated as a result of the results of the investigation described above, I was not a decision-maker in the decision to terminate his employment.

10. At the time that Ambries' employment was terminated in August 2016, I was 54 years old.

11. During the time that Ambries reported to me, he told me that an awning at the Oakland Airport maintenance facility should be constructed or something needed to be done to keep rain water from coming into that facility. He was not alone as a number of employees let me know that water would enter the facility when it rained heavily. Ambries' views of this issue, employee safety, Ambries' age or any supposed ageist remarks that he claims I made (which I deny), were never discussed in the investigation Jaimie Tison and I conducted, and were never communicated in any manner to Dan Harvey, Richard Marrs or Larry Keyes – who I understand jointly decided that Mr. Pichon's employment should be terminated.

I declare under penalty of perjury under the laws of the United States that this declaration is true and correct. Executed this 16 day of May 2018 at San Jose, California.

_____
Steven Chua